And for the appellant, Ms. Corrigan, and for the athlete, Ms. Brooks, please proceed. May it please the Court, Counsel. Good afternoon, Your Honors. My name is Amber Corrigan from the Office of the State Appellate Defender, and I represent the appellant in this matter, Michael Winfield. I intend to direct my attention this afternoon to the arguments, predominantly the argument in Argument 1, and also I will focus a bit of time on Argument 3. I will, of course, be happy to answer any questions the Court might have regarding Argument 2. As to Argument 1, the question presented is whether the trial court abused its discretion when it allowed Brooke Baldwin to present the child sexual abuse accommodation syndrome to the jury without qualifying her as an expert, instead certifying her only as qualified to testify. What does that mean? Well, in this particular case, I think what the trial court thought it meant was that she could educate the jury about the child sexual abuse accommodation syndrome. He was wrong in that an expert is required to tell the jury about the child sexual abuse accommodation syndrome, and in this particular case, Brooke Baldwin was not expert. Well, counsel, didn't it really boil down to the trial court's misconception that in order to be an expert, she had to be the person who developed, and I know it's not technically a syndrome, but developed this syndrome, so to speak? I mean, that's one of the reasons he gave, was that I find that people are, you know, if there's only one expert, that's the person that created it. I think others are qualified to educate the jury. I think that's part of it, but I think really what he had decided was she wasn't an expert, and that, I mean, he severely limited her testimony, but then allowed her to get up and talk about the syndrome, which she wasn't qualified to testify about. I mean, her background, she'd read two articles on the syndrome. She had attended a finding words seminar or training. It was about five days long. She said it was only a portion of it. She also indicated that she had read some other articles or attended some webinars, but again, she directed everything to child abuse issues. She didn't specifically say that she, you know, studied child sexual abuse. And this case is really a testament to why courts classify witnesses as either experts or lay witnesses, and that we've established boundaries for both. Because when you blur the lines of the classification, as demonstrated by this case, you lead to an unqualified witness explaining not her observations, but rather general information about a subject reserved for experts. The result of which in this case was to improperly bolster the witness's testimony, excuse me, the alleged victim's testimony. For instance, in people with these symptoms, which the appellant cites in his brief, we have a similar situation in that we have a person who gets up and says, well, 50% of people recant. But it had nothing to do with the facts of the case, just like Ms. Baldwin's testimony. And the Fourth District, this court, decided that that was improper because it allowed a general framework that may or may not apply, and it allowed it to bolster her credibility. I mean, it was a comment on her credibility, really. Well, you know, if these symptoms apply, then she must be credible. I mean, it comes from a place assuming that she's been abused. Well, it's funny you mention Simpkins, because Simpkins dealt with the admissibility of testimony under Section 115-7.2, and didn't it distinguish between the expert witness's testimony that you just referred to, but also testimony offered under that statute? Simpkins does talk about the idea that the child sexual abuse accommodation syndrome can be testified to by an expert. But it also talks about how you can't have someone get up there and testify to things that aren't relevant to the case based on facts that aren't in evidence. I mean, in that case, the example given had nothing to do, the victim hadn't even recanted, and yet the expert was able to get up there, and key, it was an expert. Well, the last paragraph of Simpkins says, Review testimony regarding symptoms and behavioral characteristics, such as the child sexual abuse accommodation syndrome, as being different than the testimony which was challenged and found wanting in that case, because such testimony does not constitute direct commentary in the child's witness's believability. Instead, the testimony constitutes circumstantial evidence, that is, it describes certain behaviors shown by sexually abused children. Thus, if other evidence shows that the victim in a particular case engaged in those behaviors, Jerry could reasonably view that evidence as supporting the state's claim that the child had been sexually abused. Wasn't there testimony in this case about the victim that engaged in behaviors that were similar to some of those, perhaps not all, but some of those shown by children who were suffering from what was termed the child's sex abuse accommodation syndrome? Well, it's true that Ms. Baldwin gave a general framework, and she did testify kind of to the five points or elements of the syndrome, but a key difference between Simpkins in this case is that Simpkins was dealing with an expert. Here, we're not dealing with an expert. We're dealing with someone who read two articles on the syndrome and then was able to kind of give a treatise or kind of a lecture on the syndrome. What was Ms. Baldwin's position? She was the associate director of the Children's, I believe it's Advocacy Network in Winnesee. What did that mean she did? Well, according to what she testified to, she worked with child abuse cases, focusing predominantly on forensic interviewing. She had a bachelor's degree in psychology. And then aside from that, she just testified to, you know, that she had the 40 hours of the finding words training. She also testified to going to a symposium on child abuse in Huntsville, Alabama. What were the deficiencies in her background to testify as an expert on this subject? Well, I would say the deficiency is we don't know. Sure, maybe she could have been an expert on child abuse issues, but here it's not developed enough that she has specific expertise in child sexual abuse. And also, her testimony was geared towards the syndrome. So he qualified her certified to testify about a syndrome of which she'd read two articles on. Are you challenging the admissibility of the child's sexual abuse accommodation syndrome as being covered under Section 115-7.2? I'm not challenging that, Your Honor. That was not challenged below. Or are you challenging it on appeal? I am not. What I'm challenging is that a non-expert testified to the syndrome. And in this case, too, you have 701 that comes into play, and that a lay witness is only supposed to be testifying about their observations. Twenty-three years ago in People v. Wasson, this court had occasion to talk about the statute and the amendment which occurred. Justice Kinect wrote that prior to January 1, 1989,  by a behavior psychologist, psychiatrist, or physician, unquote, the amendments in that year deleted the list of professionals and replaced it with an expert qualified by the court. And this court, for Justice Kinect, said, in doing so, the legislature recognized persons other than those in the medical field may be able to provide relevant, reliable insight into the post-traumatic stress syndrome, and the qualifications of experts in the broad discretion of the trial court were not to be disturbed in the absence of an abuse of discretion. Doesn't that suggest that the legislature is looking to broaden the scope of who may testify about that? I think they were looking to broaden it, but you still have to start with qualifying the person as an expert, which didn't happen here. And they also have to be an expert. And I disagree that, in this case, Brooke Baldwin is not an expert. She's read two articles. And I mean, also in Wasson, there was an expert, and that expert testified to manifestations of the symptoms related back to the victim. Here, again, we have a lay witness who's not testifying to her observations. Because there's no such thing as the designation that Judge Roseberry gave to the witness here. Of the certified qualified to testify? Yeah, I don't know what that means. You're either an expert witness permitted to render an opinion and to inform about your reading and other expertise, or you're not. Which is the exact problem. If we view Judge Roseberry as deeming this witness, Ms. Baldwin, as an expert, however awkwardly it was put, then what's the problem? Well, the problem is she's not an expert. I would respectfully disagree. Well, I've premised it by saying we view Judge Roseberry as deeming her to be an expert, and then she has testified about the child sex abuse accommodation syndrome. And then it's a matter of, was he wrong to view her as an expert? Notice the defense attorney challenged her qualifications, and the judge let her do it anyway. What's the problem, then, with her testimony? I would say the problem with her testimony becomes, then, if she is an expert, there's no guidance given. She gets up there and gives a general framework, of which the judge even decides, or says later, that this is something that's not beyond the common understanding of a lay juror. And even expert testimony has to be determined to be helpful to the jury. This is an interesting statute, which is at issue here, and I want to ask you about that. Comparing section 115-10.1, for instance, the prior inconsistent statement of substance of evidence statute. The statute does not say prior inconsistent statements shall be admissible as substance of evidence. The statute says they're not inadmissible in violation of the hearsay rule. This statute, however, says that testimony involving an illegal sexual act perpetrated by various persons, the testimony of an expert qualified by the court as to any recognized as an accepted form of post-traumatic stress syndrome, shall be admissible as evidence. What does it mean when the legislature says, shall be admissible as evidence? What does that do about what would normally be the trial court's discretion to decide, is this helpful or not helpful? Well, I mean, I think even in terms of the statute, I mean, yes, there's specifically talking about post-traumatic stress and the child sexual abuse accommodation syndrome being a version of post-traumatic stress. But you still, the court is still the one that qualifies someone as an expert. Well, that goes back to my earlier question. Let's assume the trial judge qualified her as an expert. And she's prepared to testify about the child sexual abuse accommodation syndrome, the syndrome that you're not challenging, that you recognize Illinois law has recognized. Then when the statute says it shall be admissible, what does that mean? I mean, if you're asking me what the prejudice would be, even with an expert testifying to it? Well, I suppose, I concede I'm being a little oblique. Let me give you a possible interpretation of when it says shall be admissible, meaning that, judge, this is normally your call on whether it would be helpful to the jury or not helpful to the jury beyond their kin. But if this is a recognized syndrome and you're an expert testifying about it, we're saying that it should be admissible because the legislature is deciding this is something that, as a matter of course, would be helpful to the jury and you should let it be. And I think in those cases where it does come in, if it's determined to be helpful. I was suggesting that as a possible interpretation for you to comment on. I don't think, I mean, and again, I don't know that I'm entirely clear on the question or the example, but they're saying that the child abuse accommodation syndrome can come in. It says shall be admissible, not may be admissible. That's what I'm looking for. What do they mean and what does it mean for judges when the legislature says shall be admissible? I think they're also referencing the FRI because you no longer have to do a FRI hearing because they've established that it is recognized or at least accepted. So that's part of it. You don't have to do a FRI hearing. And I think so long as the expert is qualified, then it does come in. I mean, I think that's what Illinois is saying. You know, aside from the other jurisdictions that are saying, no, this can't come in. The second district years ago in Nelson said that a few jurors have sufficient familiarity with child sex abuse to understand the dynamics of a sexually abusive relationship. And the appellate court in Nelson, again 20 years ago, said that the legislative intent underlying the statute was to grant the trial court broad discretion to admission of evidence of post-traumatic syndromes to a qualified source. Right. Doesn't this suggest that, you know, you should be letting this stuff in, judge, if you have a qualified expert and there's going to be testifying about this syndrome? If you have a qualified expert, yes. But also there's this other avenue to it in this case because he's also making the finding that a lay juror could, in fact, apply it on its own. So he's almost saying, I mean, he seems to be implying anyway, that there isn't anything here that they can't understand or that's not otherwise that they might not understand it. I mean, he's saying, well, you don't have to tell the jury that this person is, you know, consistent or that she's exhibiting symptoms that are consistent with the syndrome. But again, the problem is, A, she's not an expert, but also if it's true that the jury can understand this concept, then it's not necessary this particular case. Understand which concept? If they can understand that in this particular case, her delayed reporting, it doesn't have anything maybe to do with her credibility, but is more in line with the syndrome, then I think he's making her irrelevant. I mean, she is getting up there and just testifying in general terms about a syndrome she's read about twice. And then she's leaving it up to the jury. He's leaving it up to the jury to apply it later in the jury room. But they're coming from a place of already assuming she's been abused and then having to apply it on their own when the case law states that you have to have an expert, A, explain it to them, and also in most of the cases, at least identify where they're consistent. And we come back to the problem of Simpkins, and even when I use the example of people... Well, I'm not sure I understand that. If you have evidence about how the victim behaved, and then you have certain aspects of how she felt, what she did, what she didn't do, et cetera, and then you have the person permitted to testify as an expert about how the child sexual offense accommodation syndrome works, that is, what victims tend to show, why would you then require or indeed even permit the expert to say, and by the way, in this very case, you'll notice that Mary Jane showed 1, 2, 3, and 4. I mean, after all, the jury has heard the testimony about what Mary Jane did. Why would it be a requirement in order for this to be admissible for the person testifying about the syndrome to have to point out what I mentioned from the Simpkins case was the circumstantial evidence of similarity of these behaviors? Well, I think we do it so that we don't have jurors in there on their own going, well, okay, she doesn't have this one, but he kind of explained that, or she kind of explained that she might have this one. So you're using irrelevant evidence that may or may not apply to the facts to possibly determine who's more credible. And in a case like this one where it comes down to credibility, you have Mr. Winfield's version of the events and Mercedes' version of the events. If you have something like this, it's just a general framework testified to by someone that's not an expert, and then they're supposed to go back and on their own apply, try to find out if it applies to the case, you're bolstering her in the sense that she's explained away what otherwise might be marks against her credibility, like not being able to testify to specifics, contradicting herself on the stand. So I think that's why we have in Illinois, we have experts who are qualified to then sit and say, well, it's consistent with this. Because otherwise we get the example in Simpkins where you have someone say, or in People v. Enos, which I cited in the brief, where you have someone saying, well, eyewitnesses are unreliable in this amount of time, and you're just hoping that something sticks with the jury. You're hoping that the jury finds the witness at issue either incredible or credible. And I do notice that my time is almost up. So I briefly, very briefly, wanted to touch on Argument 3. Again, this is a fairly fact-specific argument, but the question presented is... What was Argument 3? Argument 3 is whether the jury received the not guilty verdict forms for Counts 3 and Count 4. If there are no questions, Mr. Winfield would ask that this court reverse his convictions and sentence and remand this for a new trial. Thank you. Thank you. You'll have additional time in rebuttal. Ms. Brooks. May I please support and counsel? My name is Anastasia Brooks, and I represent the people in this case. The primary issue that the defense puts forward is whether Brooke Baldwin was actually an expert witness, and not just whether she was an expert, whether the trial court recognized her as such. The state's position is to focus on what the trial court said post-trial, and the trial court's response to the defense's argument about the defense alleged in its post-trial motion that the trial court had let Baldwin give lay opinion testimony. The trial court had never, ever said that it was allowing Baldwin to testify to give lay opinion. However, what the trial court said post-trial was that Baldwin, quote, did have the expertise necessary to explain the syndrome. So it was the first and only time the trial court actually used the word expertise to refer to what he was characterizing Baldwin's testimony. Are you suggesting that the court essentially found Baldwin to be an expert witness? Essentially, that's what the trial court was getting at when the trial court said whether he was going to certify her as, quote, qualified to testify. The trial court, before Baldwin actually took the stand, said that it was going to determine if she's qualified, and then said to the parties that if she were qualified to testify, she would continue to testify, otherwise an expert witness. And essentially what happened was the defense contested her qualifications. They objected. The trial court made a ruling. She went on to give her testimony. And then the defense started saying, well, actually the defense is also complaining, well, they wanted an instruction to say, well, she's not testifying as an expert. And then the trial court says, no, I'm not getting to that issue. And there's also a reference in there to an expert in this field, and a reference to whether the prosecutor is talking about expertise in the field of child sex abuse. So there's a question as to what is the relevant field. And the trial court instead handled this issue in the most narrow possible. The trial court narrowed this topic, essentially, not to a field of child sex abuse, but to simply the topic of this accommodation syndrome. And that is what the trial court determined that Ms. Baldwin was qualified to testify about, which in the state's position is essentially meaning that she has the expertise to testify as an expert and that she is not, in fact, a lay witness. And the standard for expertise is, and the trial court should be presumed to know the law, and to the extent that the trial court did not know this law, the state would have an additional argument. But just to state, the standard for expertise is knowledge of the specialized nature, which, of course, the topic of the accommodation syndrome is knowledge of the specialized nature, beyond that of an average person. It does not take a lot of expertise. And the state cited a case in which a voter who was talking about how to properly lower a vote, and the argument was, well, this person didn't have any more expertise than an average voter. Well, that was good enough to be expertise to testify about how to lower a vote. Yes, Ms. Corrigan, I want to ask you as well, Ms. Brooks, a question that I don't think either of you discussed in your briefs and that I have been musing about, and that is, what does the statute mean when it says shall be admissible? Well, the state's position is not that there is any legislative intent behind those words. Well, in fact, as we know, legislative intent is a legal fiction, but, indeed, But, nonetheless, they wrote it. As Gilbert and Sullivan explained, legal fictions are important things, and we don't want to disregard them entirely. So we have to give meaning to when they say shall be admissible in 115-7.2, and is not rendered inadmissible, for instance, in 115-10.1. Right, I understand, Your Honor. Still, the state is not making the argument that there is an actual legislative intent behind the choice of those words in this statute in order to accomplish a particular result, such as to bypass, say, an ordinary element of admitting expert testimony, for example, the helpfulness to the jury aspect. Well, it certainly wouldn't affect the qualification of the excerpt, because it's prefaced by saying it deals with testimony by an expert qualified by the court. So the court's got to find this person who's qualified. Then relating to any recognized and accepted form of post-traumatic stress syndrome, the court's got to find that to be the case, too. And we have, as you heard, no challenge in child sex abuse, combination syndrome even being raised. Then it says shall be admissible as evidence, and it seems to me that perhaps that would address the issue normally present with regard to expert testimony, such as is this helpful or beyond the kin of the average juror? And as the case I cited earlier references, maybe that was not to eliminate that standard, at least to lower it, so that the trial courts should, this is a legislative judgment. You know, Judge, I don't expect jurors to really understand this stuff, but when we say shall be admissible, that means we should lower the standards, at least, in the business of how helpful or beyond the kin of the average juror would it be. Well, my response to the state would be that, without having actually engaged in the full legislative history research of that statute, would be if the question were what is the state's position with respect to the choice of those words shall be admissible? The fact is that as a general manner, expert testimony is limited, so that statutes like this, if they're a derogation of the common law, have to be strictly construed. So therefore, if the only thing about this statute, assuming there's no other actual legislative history marks, for example, to draw upon, just simply these words, I cannot see enough to overrule sort of like the standard practice for every other topic of expert, that could be subject of expert testimony to show that somehow this is changing the standard for that. So I'm not sure if that's a sufficient answer to your question. Well, thank you for that effort. It was just something that I was trying to assess, and I don't know that there is any clear answer. Well, the state's position also is that this court doesn't really need to address that question to have resolved issues that appear in this case, because the defendant's argument about the fact that the trial court did not let Baldwin testify to sort of like after then explaining the syndrome, to then apply it to the facts, and there was a discussion where the judge was more than willing to let Baldwin do that and asked the defense if that was what the defense wanted, and the defense said no. Say that again, I'm not sure I understood. There was a discussion as to whether the trial court would then let Baldwin testify to apply this to the facts, and the defense is that they agreed that they did not want that to happen, and the judge said essentially, and I saw this in my review of the record this morning, I did not have it printed out, but essentially said to the defense, well, I can do that if you want, and then, of course, the defense attorney, I believe, said no, I don't think so, at the end of the case law, and then the judge argued a little bit with the defense attorney, said yes, I can, but I won't essentially if you don't want me to, and that's the gist of it. But the judge was saying he would, or the judge would let Baldwin do it? The judge was willing to permit, the change was willing to permit Baldwin to testify in order to apply the syndrome to the facts, and the prosecutor made some reference at some point as well, which I don't have it printed out, that Baldwin, in fact, could do that if she were permitted to do so, but it was the defense's position that Baldwin should not apply this to the facts. Do you think the case law would have permitted her to do that? Yes, and I worked on the Atherton case, and the Atherton case, I believe, had the application, so it seemed that if this case were to follow Atherton, that would have been something the trial court could have let the witness do. However, I understand the trial court's position. The judge was looking at this and saying, it seems like the jury could figure this out, and I understand the defense, the trial judge is trying to protect the defendant's rights here, and is trying not to overstep the bounds of allowing too much expert testimony, and on maybe perhaps erring in a side of caution, not permitting Baldwin to apply this syndrome to the facts. However, that doesn't mean that the defense argument is correct, that this syndrome is not applicable to the facts, because, in fact, this syndrome does apply to the facts, such as the delayed reporting, which is what the trial court had emphasized, also the fact that this was carried on in secret, and the elements of, like, entrapment and accommodation, where the abuse continues and continues and continues until she reaches adulthood, and eventually is inadvertently disclosed through the mother noticing these romantic messages in which the mother calls police. So there's an inadvertent disclosure as well. To what extent should the acquittals affect our consideration of all of this? Well, to the extent that the defendants forfeited the issues, and the claim is of a closely balanced nature of the evidence, the fact that there was an acquittal means that the jury found a reasonable doubt to the claims of non-consensual intercourse, and it seems as to the question of whether the alleged sexual activity between them was, whether it was consensual or not, that question was a lot more closely balanced. However, the issue of whether they had, in fact, engaged in any sexual conduct whatsoever between she was age 12 to 18 years of age, in which case, after 18, he's admitting at trial, and his defense counsel is even confessing this in oral argument, that he's guilty of sexual relations within families. I mean, that charge is not contested. So there'd be no basis of, the case there was overwhelming and no issue. So the aggravated criminal sexual abuse count would be, the state would not need to prove lack of consent. Lack of consent, right. You're correct, Your Honor. If this was a consensual case, even if the victim had admitted it on the stands, then it wouldn't matter because legally it consents not to defend that charge. So, but the circumstances were that, one of the main important circumstances is this admitted relationship, sexual relationship when she is 18, and in fact the day after, he's going to the motel in Springfield, buying a room for a couple hours for $60, claiming then at trial that she was ill and wanted to lay down. And it seems like the jury can look at that and say, okay, the day after she's 18, they're having intercourse. And they can easily reject the credibility defense explanation for what's very highly incriminating. So they are looking at that circumstance and on top of all the other evidence of the several times that they're alone and odd situations, I had to take the presents for Christmas back. They went by themselves. It would have taken 20 minutes. They were gone like 45 and not answering the phone. And they come back and she's got bloodshot eyes and had been crying. There's a situation like the mother recognizes at the bowling alley that the victim is being treated like a wife or girlfriend. And there's other separations. There's witness, I think it was witnessed by the mother's sister or aunt. So there's other testimony in the record to show circumstantially that there was some sort of relationship that would support the sexual nature of it being in existence before 18 years of age. So circumstantially, I think the case was a lot more strongly weighted than the defendant characterizes. It's simply he said, she said. Ms. Corrigan cited the Simpkins case as supporting her position. Is she correct? No, Your Honor. And the reason why is because this question is not whether the case was connected to the facts, but whether it could be connected to the facts, not being connected by the witness to the facts, but whether the facts of the case could be connected with the expert testimony. And I believe the Simpkins case dealt with the alleged fact that half the people who made these allegations had recanted. And the point of that case, though, was that the victim had not recanted for any of the offered reasons by the witness. So therefore, that was not really relevant to anything that was pertinent to the facts of the case. Because the witness talks about reasons why people recant, but the victim didn't recant for those reasons. So therefore, the witness's testimony, expert testimony is not relevant. Enos is the same situation. In Enos, there was a proposed expert testimony about misconceptions regarding eyewitness identification. However, none of those misconceptions at issue that the witness wanted to talk about were at all closely relevant to the facts of the Enos case. And so therefore, there was nothing for really the jury to hear, because those were not connected to the facts, or connectable to the facts, not connected. And regarding sufficient expertise, the state's position is there is, in fact, enough expertise from the training. Training alone counts. And in 2005-2007, she received training about this particular syndrome at seminars, professional education. So essentially, there is enough expertise. And even if the judge said, no, there's not enough expertise, this is really an error in the defense's favor by the trial court refusing to explicitly characterize the witness as an expert at trial in front of the jury. By the way, that's an interesting question. No one has raised it, and you're right, that's how things usually work. But I've never understood it. Why should, if a judge is going to let a witness testify as an expert, why should the judge say anything about that to the jury? Why does the jury need to know that? The state doesn't see any reason for the jury to be told specifically, but the question is. The primary difference between an expert and lay witness is an expert is permitted to render an opinion, whereas lay witnesses must testify as to what they saw, heard, smelled, et cetera. From the point of view of the trier of fact, why don't we just let the jury hear what the witnesses say without putting the courts in premature upon taking the witness and saying, by the way, he's an expert? Correct, Your Honor, except I think the allegation here is that the judge doesn't really say, yes, she's a witness, when the defense is raising this issue. You're just suggesting that the state was arguably improperly denied of having the court so state in the jury's presence, and I've never understood why that should be the case. I'm sorry, Your Honor, that's not the state's position, that the jury needed to be told. The question is whether the judge should have explicitly recognized her as an expert, even outside the jury's presence, just at all. When the defense is claiming, well, she's not an expert. Tell the jury she's not an expert, because you're not telling us that she's an expert. Essentially, that's what the defense wanted, just to be told, the jury to be told that she's not an expert. Now, the state's position here is that Baldwin clearly met the standard for expertise, so if the judge refused to call her an expert, that's actually an abuse of discretion. And the deference is gone, essentially, because we know from the trial court's own remarks that the judge considered Dr. Summit to be the only expert in this area. I was going to ask about that. Is that a fair reading, what the trial judge is saying here, that this child's sex abuse accommodation syndrome, this court wrote about 20-some years ago, and other courts have been writing about it as well, only the guy who came up with that idea is competent to testify as an expert about it? Is that what the judge is saying? That was my reading. I was pretty astonished to read that. Did he change his mind in the post-trial? Was that your assessment? He was willing to use the word expertise post-trial. I guess, to be fair to the judge, I think maybe what he's getting at is only Dr. Summit really worked with the children and then leaned this sort of theory or syndrome from his work. So therefore, anyone else who merely reads about it didn't actually do the work necessary to develop the syndrome. So maybe the judge was a little more reluctant to let the syndrome be applied. Now, in fact, Ms. Baldwin testified to certain aspects of the syndrome, which the victim in this case, what was her name again? I forget. MMG. MMG. Did not testify or there's no evidence that she demonstrated. That is, there were some aspects of the syndrome that she did not demonstrate. Would that be correct? Recantation was one. She never recanted. Okay. Now, to what extent does that affect the overall visibility of the testimony about the syndrome? I'm trying to remember if Baldwin actually said that perhaps all elements of this syndrome might not be present in every case. So the jury would have known that there doesn't have to be. It's not like checking a list and there has to be every single element or otherwise the syndrome doesn't apply. It's not how this syndrome works. So it doesn't seem like that is the requirement for visibility, that there has to be every single element of the syndrome present. Was that argued? I don't remember, Your Honor. Your Honor, could I move on to the additional arguments? Very briefly as to the verdict form, the report of proceedings should control this case because the defense counsel asked, there was two guilty forms on count four and the judge caught that. And they were going to resubmit it. And then right before the jury went out, the defense counsel asked the trial court to recheck the verdict forms. It's only going to take a second. The trial court looked at it, confirmed there's one of each guilty and not guilty for each charge, and then the jury left. And essentially, it could not be clearer from the record of the jury that the jurors had all the proper verdict forms except for the fact that they didn't get all the written ones back. And they investigated that and found out that some of them had been discarded following deliberations. So I'm willing to ask any other additional questions you might have. I don't see any. Otherwise, I thank this court and request you to confirm.  Ms. Butler? Thank you, Your Honors. I'll be very brief. I just wanted to touch on a few things that came up during the state's argument. First, the state mentioned forfeiture. As developed in our response to the state's brief, the arguments here are not forfeited, either because the defense attorney raised the proper objections at the time and because they're also developed at the post-trial motion hearing and the judge is well aware of the issues raised and has an opportunity to address and correct the errors. As far as what the defense was, there was a little talk about what the defense counsel was trying to do and he didn't want her opinion in. Defense counsel from the very beginning did not want Ms. Baldwin to testify. Prior to the start of all this, there was some talk of a discovery violation. That kind of goes by the wayside and then it becomes, you know, I don't want this person to testify. I don't think she's qualified to testify. So he was objecting to Ms. Baldwin being able to testify, period. Is Ms. Brooks correct when she makes reference to the hearing of the post-trial motion where the trial judge referred to the witnesses having expertise? No. What he says is that she's qualified to educate the jury about the syndrome. What about the post-trial motion hearing? What did he say there? I'm not sure I know exactly. At reference to the post-trial hearing, I mean, there's the ruling at the instruction conference where he talks about she's not an expert. That's where he makes the statement. But she's able to educate the jury. What do you think it means when he says she's qualified to educate the jury about the syndrome? Right. That happens. I think what he means is that she's qualified. I mean, I think it's part and parcel of his finding that she's not an expert. Once he finds that she's not an expert. Based upon his peculiar notion that the only person who could be qualified as an expert is the guy who came up with the syndrome? That's one of the comments he makes at the instruction conference. However, that's not the only comment he makes about why it is that he's not qualifying her as an expert. There are several reasons that he gives. In part, I think he finds that she's not an expert. I mean, I think the record supports that. But two, he also determines, he has this idea that this isn't really something that the jury can't understand. So we don't need an expert. It's the confusion between Rule 701 and 702. He's confusing a lay witness and an expert witness. And what we have is an example of why we have boundaries and why we have classifications. We have to classify them because a lay witness, they have to testify on observations. Well, lay witnesses don't get to educate the jury about anything other than what they saw, heard, etc. or did. Exactly. And in this case, we have a lay witness who gets to get up there after reading two articles and tell the jury about a syndrome. But you might be able to explain the trial judge's behavior by taking his thinking, oddly. Well, she's an expert, except no one is an expert in this area except for the guy who came up with the syndrome. But short of that, she has expertise, so we'll let her educate the jury. Now, I concede it makes no sense, but at least it's an indication. It would suggest that he is not concerned about her qualifications, just about the fact that only one guy is qualified. Well, I guess I would respectfully disagree that he's not concerned about her qualifications. The first finding he makes after the prosecutor tries to qualify her is, I don't have to reach whether she's an expert. So I think that's very telling in that I think he's listening and he's thinking, I don't think she's an expert based on what you just questioned her about. And that's my opinion on the matter. And if there are no further questions? I don't see any. Well, again, we would just ask that you reverse the conviction and sentence and remand this case for a new trial. Thank you. We're going to recess until the readiness of the next case.